ALTA ROBBINS

*v.*

H. C. ROBBINS *et al.*

*Opinion filed February 21, 1907.*

ANTE-NUPTIAL CONTRACTS—*ignorance of law that marriage revokes will does not vitiate ante-nuptial contract.* An ante-nuptial contract executed by the intended wife with full knowledge of the extent of the husband's property and of the fact that it had been willed to his children, is not vitiated because she did not know that the marriage would revoke the will, where the husband himself was also ignorant of that fact and there was no actual fraud in inducing her to sign the contract, even though her advisers, none of whom were lawyers, erroneously, but in good faith, told her she would receive nothing without the contract.

APPEAL from the Circuit Court of Randolph county; the Hon. B. R. BURROUGHS, Judge, presiding.

H. CLAY HORNER,.for appellant.

A. E. CRISLER, WILLIAM M. SCHUWERK, and R. E. SPRIGG, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The circuit court of Randolph county dismissed for want of equity the bill of appellant filed in that court against the appellees, as heirs at-law of Charles Robbins, asking the court to cancel appellant's ante-nuptial contract with said Charles Robbins and to assign to her dower in his lands.

The complainant, then Alta Southworth, and Charles Robbins had both been married before their marriage to each other and each had children by the former marriage. He had a homestead in Sparta, Illinois, worth from $700 to $800, a farm eight miles from Sparta worth from $8200 to $8500, and notes aggregating $2000, mostly given by his

children for advancements and payable on the settlement of his estate. His entire property was worth about $11,000. She was living with her children and had no property except a little household furniture worth $25. He boarded with the Bennett family, who occupied his house in Sparta. The complainant was past fifty years old and Robbins was sixty-eight. Mrs. Bennett, with whom Robbins lived, was a friend of the complainant, who was in the habit of visiting her. Complainant was desirous of contracting a marriage for the purpose of securing a home, and she spoke to Mrs. Bennett about it. Mrs. Bennett told her that Robbins was worth about $12,000; that he had a farm and the town property and had some money out. Mrs. Bennett introduced complainant to Robbins in May, 1903, and acted as a sort of go-between or friend of both parties in bringing about the marriage. Robbins told Mrs. Bennett that he had made a will giving all his property to his children and he would not give complainant anything, and she expressed the opinion to him that that was not fair and that she herself would not marry on such terms. This was the latter part of August, 1903, and then Robbins went down town and came back with the contract in question, which gave complainant the use of the homestead in Sparta during her life. Mrs. Bennett said to him that that was more like it and that it would give his wife a home. Robbins said that his will was firm and he would not change it; that the will would take the property and his wife would get nothing unless he saw fit to give it to her. Mrs. Bennett, in talking with complainant about the arrangement, told her that she might just as well make the contract, because without the contract she would get nothing. Complainant came the next day and Robbins brought out the contract, and complainant, when about to sign it, threw down the pen and said, "If I have to sign a contract to get married—" and stopped. Mrs. Bennett said, "It is to your own interest to sign it," and complainant said, "Well, I guess it is," and signed the contract. This was on

August 31, 1903, and the parties were married the next day. They lived together until January 29, 1905, when Robbins died.

It is conceded by counsel for complainant that she was fully informed as to the amount of property owned by her prospective husband and of every fact and circumstance material to the contract, but he contends that she is entitled to avoid it because she was not fully and correctly informed as to her legal rights. She had full information as to the property of Robbins and there was no actual fraud inducing her to execute the contract. Mrs. Bennett told her that if she did not sign the contract she would get nothing, but this information was given through ignorance of the law. None of the parties knew that the marriage would revoke the will of Robbins and there was no actual fraud inducing her to execute the contract. Mrs. Bennett told her that if she did not sign the contract she would get nothing, but this information was given through ignorance of the law. None of the parties knew that the marriage would revoke the will, and Robbins died in the belief that the will was valid. After his death probate of the will was refused because it had been revoked by the marriage. Mere ignorance of the law in that respect would not be sufficient to avoid the contract. (*Hudnall* v. *Ham,* 183 Ill. 486.) Complainant had no reason to rely upon the opinion of Mrs. Bennett as to the law or to presume that one knew any more about the legal rights of parties in such cases than the other. This case is distinguished in that respect from the case of *Spurlock* v. *Brown,* 91 Tenn. 241, where the information as to the law was given by the husband's attorney, from whom the wife had a right to expect a full and correct statement of her legal rights. In this case there was no actual fraud affecting the contract, and we think the decree of the circuit court was right.

The decree is affirmed.                    *Decree affirmed.*